IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | |
|---|---|
| KILMAR ARMANDO ABREGO GARCIA, et al.,<br><br>*Plaintiffs-Appellees*,<br><br>v.<br><br>KRISTI NOEM, Secretary of Homeland Security, et al.,<br><br>*Defendants-Appellants*. | No. 25-1404 |

**EMERGENCY MOTION FOR STAY PENDING APPEAL AND PETITION FOR WRIT OF MANDAMUS**

Article II of the Constitution bestows on the President—and through him, the Executive Branch—the exclusive power over foreign relations. The Supreme Court reaffirmed that principle in this very case, unanimously rejecting the District Court's unprecedented command that the Executive actually *effectuate* the return of Abrego Garcia from El Salvador—*i.e.*, force a foreign sovereign to relinquish one of its own citizens. Under the guise of an amended order, however, the same District Court has set down the same unjustifiable path, all in service of a member of a foreign terrorist organization with no valid right to be in the United States in the first place. This Court's immediate intervention is needed.

The federal courts do not have the authority to press-gang the President or his agents into taking any particular act of diplomacy. Instead, in this context, the courts only have the authority to order the Executive to "facilitate" the return of an alien removed abroad. And as that term has long been understood and applied, that means

the Executive must remove any *domestic* barriers to the alien's return; it does not, and constitutionally cannot, involve a directive to take any act upon a foreign nation.

The District Court, though, has again crossed that line. Notwithstanding the fact Defendants have filed a declaration affirming that the United States is in the process of removing domestic impediments to any return on the part of Abrego Garcia—a member of a foreign terrorist organization (MS-13), who no longer has any right to withholding of removal in the first place—the District Court has demanded more. It has ordered the Executive to go beyond the longstanding understanding of what "facilitation" requires, necessarily going beyond what Article III allows a court to do. In the setting of a case involving a citizen of a foreign sovereign, who is a member of a foreign terrorist organization, held in the domestic custody of that sovereign, there is no question that the Executive's foreign affairs powers are at their apex. Yet here, a single district court has inserted itself into the foreign policy of the United States and has tried to dictate it from the bench. Emergency relief is needed.

As bad, while the District Court has rejected this "well-established" definition, *Noem v. Abrego Garcia*, 2025 WL 1077101, at *2 (Sotomayor, J., statement respecting the disposition of the application), it refused to provide any sort of definition of its own. And worse, it then ordered extensive and expedited discovery into the Executive Branch to probe how it has (or might) effectuate this ill-defined directive. The result is a fishing expedition, captained by plaintiffs armed with an open-ended mandate, who have already ordered scores of production requests, burdensome interrogatories, and at least four (and perhaps more) depositions of Executive Branch officials. At

minimum, *that* is untenable, and mirrors mistakes regarding governmental discovery that other appellate courts have corrected in mandamus.

This Court must act. It should stay the District Court's amended injunction, which extends beyond its equitable authority. And it should grant mandamus to direct the District Court to vacate its capacious discovery order. In the meantime, Defendants respectfully request this Court issue an immediate administrative stay. Counsel for Plaintiffs were contacted by e-mail and notified the undersigned that they oppose this motion.

**STATEMENT**

**1.** Kilmar Armando Abrego Garcia is a citizen and native of El Salvador. ECF 1-1, at 1. Far from an ordinary resident of Maryland, Abrego Garcia is a member of the designated foreign terrorist organization MS-13. *See* ECF 64 ¶ 6. He has never been lawfully admitted into the United States; and in 2019, Abrego Garcia was ordered removed from this country. *Id.* ¶ 7; *see also* ECF 77 ¶ 6.

On March 15, 2025, Abrego Garcia was finally removed to El Salvador. While Defendants did not go through the formal procedures to terminate Abrego Garcia's withholding-of-removal order to El Salvador, Abrego Garcia is no longer eligible for that form of protection, given his membership in a foreign terrorist organization. *See* ECF 77 ¶ 7.

**2.** On March 24, 2025, Plaintiffs filed this suit, challenging Abrego Garcia's removal to his native country of El Salvador. On April 4, the District Court preliminarily enjoined Defendants to "facilitate and effectuate the return of [Abrego

Garcia] to the United States by no later than 11:59PM on Monday, April 7." ECF 21, at 2. Defendants then sought an immediate stay of the District Court's injunction.

On April 7, this Court affirmed. Judge Wilkinson concurred only in the denial of the motion for a stay pending appeal, and wrote to emphasize the District Court's original order should be read no broader than requiring "the government 'facilitate' the plaintiff's return to the United States." *Abrego Garcia v. Noem*, 2025 WL 1021113, at *6 (4th Cir. 2024) (Wilkinson, J., concurring). Judge Wilkinson stressed "the Executive's broad authority in international relations must afford it latitude as to how the facilitation of Abrego Garcia's release can best be accomplished." *Id.* at *7.

That day, Defendants appealed to the Supreme Court.

**3.** On April 7, Chief Justice Roberts issued an administrative stay to forestall the District Court's arbitrary deadline. A few days later, the Supreme Court granted Defendants' application in part. The Court affirmed that Defendants must "facilitate" Abrego Garcia's "release from custody in El Salvador." *Noem v. Abrego Garcia*, 2025 WL 1077101, at *1. But it did so only insofar as such directive gave "due regard for the deference owed to the Executive Branch in the conduct of foreign affairs," *id.*, and tracked the "well-established policy" of the Executive Branch, *id.* at *2 (Sotomayor, J., statement respecting the disposition of the application). The Court unanimously rejected the District Court's unprecedented directive to *effectuate* Abrego Garcia's removal from El Salvador—*i.e.*, force a foreign sovereign to relinquish one of its own citizens being "detained pursuant to [its] sovereign, domestic authority." ECF 63 ¶

3. The Court remanded for the District Court to "clarify" its order in a way that would not "exceed the District Court's authority." 2025 WL 1077101, at *1.

**4.** Notwithstanding the Supreme Court's command to give "due regard for the deference owed to the Executive Branch in the conduct of foreign affairs," *id.*, the District Court issued an amended preliminary injunction that evening, without even hearing from the Government, *see* ECF 50, 51. It revised its order to "DIRECT that Defendants take all available steps to facilitate the return of Abrego Garcia to the United States as soon as possible." *Id.* at 1. The District Court also ordered a supplemental declaration by 9:30 AM the next day (extended later to 11:30 AM) "from an individual with personal knowledge" of Abrego Garcia's status, as well as all steps taken to facilitate his return from El Salvador. *Id.* at 1-2.

Following a hearing, the District Court held Defendants had failed to comply with its new injunction. That court then ordered daily declarations from sufficiently senior executive officials, to give regular updates about Abrego Garcia's status, plus steps taken (or soon to be taken) to "facilitate his return." ECF 61, at 1.

**5.** Defendants submitted daily status reports in response to that court's order. On the first day, a declarant was able to attest that Abrego Garcia was "alive and secure" in El Salvador, "detained pursuant to the sovereign, domestic authority of El Salvador." ECF 63 ¶ 3; *see* ECF 64 ¶ 8 (affirming same next day). On April 14, while President Bukele of El Salvador visited Washington, a declarant emphasized that while "DHS does not have authority to forcibly extract an alien from the domestic custody of a foreign sovereign nation," the agency "has established processes for

taking steps to remove domestic obstacles that would otherwise prevent an alien from lawfully entering the United States." ECF 74 ¶ 7. The next day, that declarant affirmed that consistent with the processes DHS had established, "if Abrego Garcia does present at a port of entry," he would not be turned away. ECF 77 ¶ 8. Instead, even though Abrego Garcia is a member of a foreign terrorist organization, DHS would take him into "detention," satisfying any obligation to "facilitate Abrego Garcia's presence in the United States." *Id.* ¶ 9; *see also id.* ¶ 7.

**6.** On April 15, the District Court held a status conference and then ordered wide-ranging expedited discovery in connection with its amended injunctive order. ECF 79. Specifically, that court authorized Plaintiffs to demand (i) fifteen requests for production of documents, (ii) fifteen interrogatories, and authorized (iii) at least four high-ranking depositions, with the possibility of two more. *Id.* at 7. That court broadly defined the scope of this discovery as anything relating to Abrego Garcia's current status, as well as all past or future steps to facilitate his removal to the United States. *Id.* at 6-7. It also ordered all of this completed next week. *Id.* at 7-8.

**STANDARDS OF REVIEW**

The decision of whether to grant a stay pending appeal turns on four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). A court may issue a writ of mandamus under the All Writs Act when

mandamus would vindicate a "clear and indisputable" right, "no other adequate means" of relief exists, and the writ is "appropriate under the circumstances." *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004); 28 U.S.C. § 1651.

## ARGUMENT

### I. The District Court's Amended Injunction Is Unconstitutional.

The District Court has ordered Defendants to "take all available steps to facilitate the return of Abrego Garcia to the United States as soon as possible." ECF 51, at 1. And it has since made clear that command extends beyond how "facilitate" has been traditionally understood. ECF 79, at 4-6. That extension is well past what the Constitution permits; and it is not what the Supreme Court ordered. This Court should promptly stay the District Court's (yet again) unconstitutional directive.

**1.** The federal courts do not have the authority to force the Executive Branch to engage in a particular act of diplomacy or engage with a foreign sovereign in a given manner. That is the "exclusive power of the President as the sole organ of the federal government in the field of international relations." *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936). Such power is "conclusive and preclusive." *Trump v. United States*, 603 U.S. 593, 607 (2024); *see, e.g.*, *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948) (Foreign affairs decisions are "of a kind for which the Judiciary has neither aptitude, facilities nor responsibility and which has long been held to belong in the domain of political power not subject to judicial intrusion or inquiry.").

A federal court thus cannot enjoin the Executive Branch to perform some diplomatic act—or issue an injunction where diplomatic action is essential for the Executive to come into compliance. This is because the "federal equity power cannot extend beyond what the separation of powers will allow." *In re Trump*, 958 F.3d 274, 297 (4th Cir. 2020) (Wilkinson, J., dissenting). And the Constitution's separation of powers compels the "President's independent authority" over "foreign affairs" must be "free from interference" by the judiciary. *Id.* at 307; *see also Abrego Garcia v. Noem*, 2025 WL 1021113, at *7 (Wilkinson, J., concurring in denial of stay).

Applying these principles, any court order to "facilitate" the return of a foreign national from a foreign land must be limited to domestic measures. Indeed, that is what the term has long meant in the immigration context—to "engage in activities" that would allow a removed alien to "travel to the United States," such as by granting "parole" should he arrive at a point of entry. *See* U.S. Immigration and Customs Enforcement, Directive 11061.1, § 3.1 (Feb. 24, 2012) (defining "facilitate an alien's return").[1] In other words, to "facilitate" an alien's return is to remove any *domestic* obstacles that would otherwise bar the alien's ability to return. The federal courts—including this Court—have consistently respected this limit and have ordered relief consistent with the outer bounds of their own authority. *See Ramirez v. Sessions*, 887

[1] Available at: https://www.ice.gov/doclib/foia/dro_policy_memos/11061.1_current_policy_facilitating_return.pdf.

F.3d 693, 706 & n.11 (4th Cir. 2018) (directing government to "facilitate" alien's return "pursuant to [ICE's] Directive").[2]

Unsurprisingly, that is precisely what the Supreme Court ordered in this case. Again, the Court unanimously rejected the District Court's unprecedented command that Defendants compel El Salvador to relinquish one of their own citizens. *Abrego Garcia*, 2025 WL 1077101, at *1. And in affirming that Defendants should "facilitate" Abrego Garcia's "release from custody in El Salvador," the Court emphasized that the scope of that order was conditioned by "the deference owed to the Executive Branch in the context of foreign affairs." *Id.* In more concrete terms, tracking what the Government pressed in its brief, the Court ordered that Defendants needed to follow the "well-established policy" just described. *Id.* at *2 (Sotomayor, J., statement respecting the disposition of the application) (relying on the ICE Directive).

**2.** The District Court has again breached this line, and "exceed[ed]" the bounds of its "authority." *Id.* at *1; *see Abrego Garcia*, 2025 WL 1021113, at *6-7 (Wilkinson, J., concurring in denial of stay). That court rejected the above as a "fallacy." ECF 79, at 4. And it insisted that its order went beyond "taking all available steps to remove any *domestic* obstacles" that would otherwise bar Abrego Garcia's return to the United States—although it did not specify the steps required. *Id.*; *see* ECF 51.

That is unlawful. The understanding of facilitate described above marks the outer bounds of what a federal court can order from the Executive. Anything further

[2] *E.g.*, *Lopez-Sorto v. Garland*, 103 F.4th 242, 249 (4th Cir. 2024) (defining "facilitate" by ICE Directive); *Garcia v. Garland*, 73 F.4th 219, 234 (4th Cir. 2023) (similar); *Nunez-Vasquez v. Barr*, 965 F.3d 272, 286 & n.10 (4th Cir. 2020) (similar).

intrudes upon the President's exclusive Article II domain. The District Court offered two justifications for this severe constitutional trespass. Neither is colorable.

*First*, the District Court relied on dictionary definitions of the word "facilitate" to argue that it required "more extensive governmental efforts." ECF 79, at 4. But as explained, in the immigration context, "facilitate an alien's return" is a term of art, informed by longstanding executive practice and the separation of powers. And *that* definition is far narrower than its ordinary meaning. It does not include all things to "make the occurrence of (something) easier." ECF 79, at 4. Rather, it is cabined to domestic measures, which do not reach past the sovereign lands of the United States. *See, e.g.*, *Ramirez*, 887 F.3d at 706 n.11 (explaining "facilitate" does not involve, among other things, "making flight arrangements for the alien").[3]

*Second*, the District Court asserted Defendants "appear to have done nothing" to facilitate Abrego Garcia's return. ECF 79, at 5. But that is just completely wrong. In the days following the Supreme Court's remand, "DHS has established processes

---

[3] The District Court cited documents collected in a 2014 SDNY case for the proposition that the Government can be ordered to engage in "more extensive" efforts to "facilitate" an alien's return. ECF 79, at 5 n.1 (citing *Nat'l Immigr. Project of Nat'l Laws. Guild v. U.S. Dep't of Homeland Sec.*, No. 11-cv-3235, 2014 WL 6850977 (S.D.N.Y. Dec. 3, 2014)). But that court overread these sources. Foremost, its main citation (a letter by then-Deputy Solicitor General Dreeben) pegged federal policy to the ICE Directive above. ECF No. 79-4, at 43 (citing ICE Directive 11061.1). As for its other cites, none involved facts like these, where a member of a foreign terrorist organization was being held in the custody of a foreign sovereign. *See, e.g.*, *Nat'l Immigr. Project of Nat'l Laws. Guild*, 2014 WL 6850977, at *2 (describing example where in 2014 "ICE refused to pay for [the] return" flight of an alien removed to Haiti, before reversing course as part of "mooting his appeal"). Nor do they speak to what is within the power of the federal courts to compel; even if the Executive Branch chooses to exercise its foreign affairs powers in certain cases, that would not mean the federal courts could commandeer them in future cases.

for taking steps to remove domestic obstacles that would otherwise prevent [Abrego Garcia] from lawfully entering the United States." ECF 77 ¶ 8. And just yesterday, DHS affirmed that "if Abrego Garcia does present at a port of entry," he would not be turned away—instead placed into "detention by DHS" for further processing. *Id.* ¶ 9.

The District Court's minimization of these efforts is indicative of its utter maximalist view of "facilitate." And it is a clear marker that the court below will try to force that view on Defendants until an appellate court stops it. This Court should do so immediately. It should stay the District Court's amended injunction insofar as it goes beyond how the Executive Branch—and for that matter, this Court—has long defined "facilitate." And it should stop the District Court's now recurring effort to effectively conduct our diplomacy with El Salvador from Greenbelt.

**3.** The District Court's amended injunction also violates the mandate rule. *Doe v. Chao*, 511 F.3d 461, 464-65 (4th Cir. 2007). The Supreme Court made clear the original preliminary injunction "require[d] clarification on remand" before it could become effective, and further ordered the "District Court should clarify its directive, with due regard for the deference owed to the Executive Branch in the conduct of foreign affairs." *Noem v. Abrego Garcia*, 2025 WL 1077101 at 1. The District Court flouted this mandate. Far from giving "due regard" to the Executive in clarifying its order, it refused even to permit the Executive to file a brief before an amended preliminary injunction issued, mere hours after the Supreme Court's April 10 stay decision. *See* ECF 50, 51. And as for its substance, the District Court relegated this Supreme Court directive to a footnote in a subsequent order after Defendants objected

to the amended injunction. ECF 79 at 6 n.2. And even there, that court failed to meaningfully engage with it, let alone tailor its order accordingly.

## II. The District Court's Discovery Order Must Be Vacated.

No discovery is appropriate in this case, because Defendants have done (and are doing) exactly what the Supreme Court has ordered: They are removing domestic impediments to Abrego Garcia's return—*i.e.*, they are "facilitating" that return. But even putting that aside, the District Court's discovery order harbors fundamental infirmities. The Supreme Court has long recognized that a discovery order that improperly intrudes on the separation of powers satisfies the requirements of mandamus. *See, e.g.*, *Cheney*, 542 U.S. at 382. That is the case here.

**1.** At true minimum, the District Court should have put forward a definition of "facilitate," before ordering invasive discovery into the Executive Branch. But that court refused to do so, failing to offer any guidance beyond rejecting what Defendants proffered. *See* ECF 79, at 4-6. That does not work at all. Before going down the road of intrusive discovery into what Defendants have done to date and what they will do in the future, it was incumbent on the District Court to define what they were in fact *supposed to do* under its order. The alternative leaves a moving discovery target at best, and a blank check for plaintiffs at worst. This Court should grant mandamus and order the District Court to first decide this threshold issue.

Ordering discovery into a separate branch of government is a weighty step that should never be taken lightly. *Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985). At the very least, respect for a coordinate branch of

government requires a federal court to resolve all threshold issues *before* taking the extraordinary step of ordering discovery. Indeed, the D.C. Circuit recently stayed a discovery order into the Executive Branch for this exact reason, where the district court failed to first resolve a pending motion to dismiss. *See In re Musk*, 2025 WL 926608 (D.C. Cir. Mar. 26, 2025) (citing *Cheney*, 542 U.S. at 389-90).

Those principles apply here in full measure. The District Court ordered far-reaching discovery to probe, in particular, what added measures Defendants are able to perform to "facilitate" Abrego Garcia's return. ECF 79, at 6-7. But so long as that term is undefined, discovery will necessarily become open-ended. The result will be a fishing expedition, which is improper even in *ordinary* litigation. *See, e.g., Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,* 334 F.3d 390, 403 (4th Cir. 2003). And on the other side, Defendants will be forced to endure the significant set of discovery requests authorized below, without any concrete metric by which to proffer objections.

That has already started to bear out in practice. This evening, Plaintiffs served on Defendants their written discovery requests. Pls.' 1st Set of Interrogatories to Defs. Appendix 25-30 ("Interrogatories"); Pls.' 1st Set of Requests for Production to Defs., Appendix 17-22 ("Production Requests"). Many of those requests turn entirely on how one understands "facilitate"—for instance, repeated requests for all past, present, and future actions to "Facilitate Abrego Garcia's return to the United States." Interrogatories Nos. 1-5; Production Requests Nos. 1-2. Of a piece, the uncertain scope of the District Court's discovery order has begotten a host of other

far-reaching requests, including: All communications between Defendants and the Government of El Salvador about Abrego Garcia, Interrogatories No. 7; Production Requests No. 4; any payments or detention arrangements between the United States and El Salvador, Interrogatories Nos. 9-11; Production Requests Nos. 6-8; and all instances since 2015 where Defendants "facilitated" the return of an alien anywhere in the world; Interrogatories Nos. 12-13; Production Requests Nos. 9-10.

That is no way to conduct discovery into a coequal branch. Before a federal court permits such an intrusion, it must carefully calibrate its scope—which at minimum, requires defining its terms with particularity. The District Court failed to do so; in fact, it disclaimed the enterprise. *See* Hearing Tr. 22:18-21 (Apr. 15, 2025). That is not palatable, especially given that the contemplated discovery here almost by definition implicates certain core privileges, such as attorney-client privilege (in the context of an Acting General Counsel for DHS) or certain executive privileges (given this case involves the removal of a member of a foreign terrorist organization). This Court should order the court below to vacate its discovery order, and first specifically state what that court believes it can still require from Defendants, beyond what the Executive Branch has already done.

**2.** Again, no discovery is appropriate. But depositions of Executive Branch officials are especially unjustifiable. If nothing else, this Court should grant mandamus to direct the District Court to set aside this portion of its order.

Compelling the testimony of high-ranking government officials is justified only in "extraordinary instances." *Village of Arlington Heights v. Metropolitan Hous. Dev.*

*Corp.*, 429 U.S. 252, 268 (1977). That is because "the compelled appearance of a high-ranking officer of the executive branch in a judicial proceeding implicates the separation of powers," and because "[t]he duties of high-ranking executive officers should not be interrupted by judicial demands for information that could be obtained elsewhere," *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (per curiam). Among much else, such depositions "create[] 'a tremendous potential for abuse or harassment.'" *K.C.R. v. Cnty. of Los Angeles*, 2014 WL 3434257, at *3 (C.D. Cal. July 11, 2014); *see also, e.g.*, *In re U.S. Dep't of Educ.*, 25 F.4th 692, 705 (9th Cir. 2022).

Federal appellate courts routinely have granted mandamus relief to guard against undue executive depositions. *E.g.*, *United States v. Morgan*, 313 U.S. 409, 421–22 (1941); *see also U.S. Bd. of Parole v. Merhige*, 487 F.2d 25 (4th Cir. 1973); *In re Paxton*, 60 F.4th 252 (5th Cir. 2023); *In re Off. of Utah Att'y Gen.*, 56 F.4th 1254 (10th Cir. 2022); *In re U.S. Dep't of Educ.*, 25 F.4th 692 (9th Cir. 2022); *In re United States*, 624 F.3d 1368 (11th Cir. 2010); *In re Cheney*, 544 F.3d 311 (D.C. Cir. 2008); *In re United States*, 197 F.3d 310 (8th Cir. 1999); *In re FDIC*, 58 F.3d 1055 (5th Cir. 1995); *In re Off. of Inspector Gen.*, 933 F.2d 276 (5th Cir. 1991). As these cases lay bare, a district court cannot properly authorize a deposition of a high-ranking official without first assessing at minimum, (1) "whether the information desired can be sought from alternative witnesses or must exclusively come from" the witness in question and (2) "whether the information desired can be obtained in another form." *In re Bryant*, 745 F. App'x 215, 220 (5th Cir. 2018) (per curiam).

Nowhere did the District Court make these findings. It did not even try. That court, instead, ordered "expedited" depositions of a number of high-ranking executive officials, without ever explaining why those witnesses were necessary or held information that could only be obtained via a deposition. In its zeal to raze every barrier to expeditious and extensive discovery, the District Court did not even let Defendants brief the issue—or offer alternatives. *See* Transcript 27:11-12, Appendix 70 ("[C]ancel vacation. Cancel other appointments."). That is grievous error. Depositions of senior executive officials are a means of last resort. The District Court's rushed and unsubstantiated compulsion of them cannot stand.

## III. The Equities Demand Relief.

There is no doubt that Defendants will suffer irreparable harm, absent this Court's intervention. There is severe and uncurable damage every moment that a federal court commandeers the core Article II prerogatives of the Executive Branch. *See, e.g.*, *Does 1–26 v. Musk*, No. 25-1273, 2025 WL 1020995, at *6 (4th Cir. 2025) (An injunction that "dictate[s] and restrict[s] a separate branch of government . . . truly is irreparable."). So too forcing the Executive to divert attention and resources to comply with unjustified and far-reaching discovery obligations.

On the other side of the ledger, vacating the injunction would not substantially or irreparably harm Plaintiffs. Plaintiffs have contended that Abrego Garcia faces irreparable harm from being detained in CECOT. But as the United States has reiterated, it would not have removed any alien to El Salvador for detention in CECOT if doing so would violate its obligations under the Convention Against

Torture. More, Plaintiffs have argued that sending Abrego Garcia to El Salvador (in violation of his withholding order) is itself harmful. But Plaintiffs do not contest that membership in a foreign terrorist organization renders one ineligible for withholding of removal; nor do they contest the United States could reopen Abrego Garcia's removal proceedings upon his return and proceed to remove him back to El Salvador.

The public interest strongly favors immediate relief. If there is ever a situation where the federal courts should be *especially* careful about intruding on the exclusive foreign relations powers of the President, it should be in the context of facilitating the return of a member of a foreign terrorist organization presently being held in another land. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (recognizing clear public interest in removing "particularly dangerous" aliens). Nor is the public interest served when key members of the Executive Branch entrusted with immigration enforcement are diverted from their positions to comply with burdensome discovery requests, let alone depositions. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009). All the more so, where those officials are presently charged with combatting an immigration crisis that cannot tolerate a day's more delay. *See, e.g.*, Exec. Order 14,159, *Protecting the American People Against Invasion*, 90 Fed. Reg. 8,443 (Jan. 29, 2025); Exec. Order 14,157, *Designating Cartels and Other Organizations as Foreign Terrorist Organizations and Specially Designated Global Terrorists*, 90 Fed. Reg. 8,439 (Jan. 29, 2025).

## CONCLUSION

This Court should stay the District Court's amended injunction and issue a writ of mandamus vacating the District Court's discovery order. In the meantime, this Court should issue an immediate administrative stay of both of the orders below.[4]


Respectfully submitted,

**Yaakov M. Roth**
Acting Assistant Attorney General
Civil Division

**/s/ Drew Ensign**
**Drew C. Ensign**
Deputy Assistant Attorney General
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 514-2000
drew.c.ensign@usdoj.gov

**John Blakeley**
Senior Counsel for Appellate Litigation
Office of Immigration Litigation

Dated: April 16, 2025

*Counsel for Defendants–Appellants*


[4] Because of the imminent timeline of the district court's order and because of the importance of the issues presented, Defendants will be concurrently seeking a stay pending appeal from the district court. *See* Fed. R. App. P. 8(a)(1).

**Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements**

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 4767words.

2. This document complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface (Century Schoolbook) using Microsoft Word for Microsoft 365.

Dated: April 16, 2025

/s/ John Blakely
U.S. Department of Justice
*Counsel for Defendants-Appellants*