No. 25-1404

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

KILMAR ARMANDO ABREGO GARCIA and others,

*Plaintiffs-Appellees*,

v.

KRISTI NOEM, Secretary of Homeland Security, and others,

*Defendants-Appellants*.

On appeal from the District of Maryland

No. 8:25-cv-00951 (Xinis, J.)

**AMICUS BRIEF OF JOSEPH DUDEK
OPPOSING APPELLANTS' STAY MOTION**

Joseph Dudek
4605 Huntley Drive
Ellicott City, Maryland 21043
(585) 755-6479
dudekj@gmail.com

## Table of Contents

Identity and Interest of Amicus ............................................................. 4

Statement ................................................................................................. 4

Summary of Argument .......................................................................... 6

Argument .................................................................................................. 7

    I.   Deference to the Executive means letting the Executive choose from among its lawful options. ................................................. 7

    II.  The Government's motion seeks unreviewable authority to deny due process, not deference. .................................................... 11

    III. The Government's new reading of "facilitate" is incoherent. ................. 13

Conclusion .............................................................................................. 16

Certificate of Compliance ................................................................. 17

## TABLE OF AUTHORITIES

**Cases**

*Anti-Fascist Refugee Committee* v. *McGrath,* 341 U.S. 123 (1951) ...............................7

*Boumediene v. Bush*, 128 S.Ct. 2229 (2008) ............................................................. 9

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ........................ 9

*Dep't of Commerce v. New York*, 139 S.Ct. 2551 (2019) ...............................................10

*Dep't of Navy v. Egan*, 484 U.S. 518 (1988) ........................................................... 7, 8

*Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) ..................................................................8, 9

*INS v. Abudu,* 485 U.S. 94 (1988) ........................................................................... 9

*Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) .........................................10

*Noem v. Abrego Garcia*, no. 24A949 (U.S. Apr. 10, 2025) .......................................... 4

*Orloff v. Willoughby*, 345 U.S. 83 (1953) ................................................................. 8

*Ramirez v. Sessions*, 887 F.3d 693, 706 & n.11 (4th Cir. 2018) ................................. 15

*Rostker v. Goldberg*, 453 U.S. 57 (1981) ...................................................................7

*Trump v. Hawaii*, 138 S.Ct. 2392 (2018) ............................................................. 9, 12

*Trump v. United States*, 603 U.S. 593 (2024) ...........................................................12

*Turn v. Safley*, 482 U.S. 78 (1987) ...........................................................................10

*United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304 (1936) ..........................12

*United States v. Nixon*, 418 U.S. 683 (1974) ....................................................... 8, 11

**Other Authorities**

U. S. Immigration and Customs Enforcement, Directive 11061.1, *Facilitating the Return to the United States of Certain Lawfully Removed Aliens* (Feb. 24, 2012) ...14

## IDENTITY AND INTEREST OF AMICUS[1]

I have been a member of the Bar of this Court since December 29, 2017. Like Mr. Abrego Garcia, I reside in Maryland with my American-citizen wife. R.161.[2] Defendants' (the "Government's") motion asserts the power to send me to the same Salvadoran prison, then do nothing to get me back. That is not how our constitutional system of government works.

## STATEMENT

On April 10, 2025, the Supreme Court unanimously affirmed this Court's unanimous affirmance of the district court's temporary restraining order (TRO). *Noem v. Abrego Garcia*, no. 24A949, slip op. at 2.[3] Explaining its order *per curiam*, the Supreme Court wrote that this Court "should clarify its directive with due regard for the deference owed to the Executive Branch in the conduct of foreign affairs." *Id*. The same day, the district court clarified its order, focusing on

---

[1] This brief was not prepared or authored, in whole or in part, by any party to this appeal. No party or counsel to any party contributed money that was intended to fund preparing or submitting this brief. No person—other than amici, their members, or their counsel—contributed money that was intended to fund preparing or submitting this brief.

[2] The Government attached portions of the record below to its motion. "R." citations in this brief refer to the pagination applied by the Government to those attachments.

[3] https://www.supremecourt.gov/opinions/24pdf/24a949_lkhn.pdf

Defendants' (the "Government's") obligation to facilitate Mr. Abrego Garcia's return to the United States from a Salvadoran prison to which he was unlawfully rendered.

At a hearing the next day, the Government argued that "due regard for the deference owed to the Executive Branch" requires that this Court receive a new round of briefing before the unanimously affirmed TRO could be reimposed. (Dist. Ct. ECF No. 60.)[4] The district court rejected that argument, instead finding that the Government has failed to comply with the TRO. (Dist. Ct. ECF No. 61.)

Over the weekend, the Government appeared to contend that deference to the Executive means this Court cannot enforce its twice-affirmed TRO. On Saturday, a senior bureau official at the State Department wrote that Mr. Abrego Garcia "is alive and secure" in a Salvadoran prison, but the official said nothing about what the Government is doing to facilitate his return to the United States. R.110. On Sunday, the Assistant Director for Enforcement and Removal Operations at U.S. Immigration and Customs Enforcement (ICE) provided no update at all: "It is my understanding that Defendants have no updates for the Court beyond what was provided yesterday." R.108.

---

[4] *See* Anna Bower, BLUESKY (April 11, 2025), https://bsky.app/profile/annabower.bsky.social/post/3lmkjiol5e22j.

But a late-Sunday filing clarified the Government's new argument: If this Court's directive to "facilitate" Mr. Abrego Garcia's return to the United States means that the government must actively try to get him back, then the order "would … flout the Supreme Court's order" and "violate the separation of powers." R.116. The Government's new position, then, is that "due regard for the deference owed to the Executive Branch" means the district court cannot direct the Government to take any affirmative step to get Mr. Abrego Garcia back. Again, the district court rejected that argument and ordered discovery into whether the Government has done anything to facilitate Mr. Abrego Garcia's return.

The Government has now appealed and moved for a stay of the district court's order, contending here that if the district court wants it to do *anything* to try to get Mr. Abrego Garcia back, that would amount to telling the President to "force a foreign sovereign to relinquish one of its own citizens." Mot. 1.

### Summary of Argument

**1.** The Government seeks a kind of "deference" under which the Executive can openly violate the Constitution and the Judiciary cannot cure the violation. Nothing in Supreme Court doctrine about deference commands that result.

**2.** In the context of applicable doctrine, the Government's stay motion seeks unreviewable authority to imprison people, not deference.

**3.** The Government's interpretation of the word "facilitate" is intentionally blind to the context of this case. When the Government illegally flies someone to a foreign prison, facilitating that person's return necessarily includes working in good faith to get him *out* of the prison and *back* to the United States.

## ARGUMENT

**I.   Deference to the Executive means letting the Executive choose from among its lawful options.**

This Court always owes the rest of the government some measure of deference. The other branches are "coequal"—they "also have taken the oath to observe the Constitution and … have … responsibility for carrying on government." *Anti-Fascist Refugee Committee* v. *McGrath,* 341 U.S. 123, 164 (1951) (Frankfurter, J., concurring). This basic willingness to consider the other branch's view of the law is especially appropriate when the branch "specifically considered" whether it was acting constitutionally. *Rostker v. Goldberg*, 453 U.S. 57, 64 (1981).

Deference is heightened when the case involves foreign relations. The Supreme Court "has recognized 'the generally accepted view that foreign policy was the province and responsibility of the Executive.'" *Dep't of Navy v. Egan*, 484 U.S. 518, 529–30 (1988) (quoting *Haig v. Agee,* 453 U.S. 280, 293-294 (1981)). Because foreign relations is one of the President's "Art[icle] II duties," courts show "the utmost deference to Presidential responsibilities." *Id*. (quoting *United States v.*

7

*Nixon*, 418 U.S. 683, 710 (1974)). "Thus, unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs." *Id.* at 530 (collecting cases).

But deference in this context means that the Executive can choose how to act *lawfully*; it does not mean that the Executive can act *unlawfully*. For example, the Executive is entitled to a high level of deference in its management of military affairs. *Orloff v. Willoughby*, 345 U.S. 83, 93–94 (1953) ("judges are not given the task of running the Army"). But the Executive earns deference only when it acts legitimately: "Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters." *Id.* at 94. Under this rule, courts can "determine whether one has been lawfully inducted and is therefore within the jurisdiction of the Army and subject to its orders," but they cannot "revise duty orders as to one lawfully in the service." *Id.* Similarly, even though the Executive has substantial authority over "core strategic matters of warmaking" that can affect the procedures available to captured enemy combatants, the Executive cannot offer a procedure that "give[s] short shrift to the values that this country holds dear" like "our Nation's commitment to due process." *Hamdi v. Rumsfeld*, 542 U.S. 507, 531–32 (2004). The Executive can choose a procedure, but it must choose a constitutional

8

one. *Id.*; *see Boumediene v. Bush*, 128 S.Ct. 2229, 2275 (2008) ("If and when habeas corpus jurisdiction applies, as it does in these cases, then proper deference can be accorded to reasonable procedures … under lawful and proper conditions … for a reasonable period of time.").

The same is true in immigration cases (of which this is arguably one). Courts are traditionally sensitive to the foreign-relations issues raised by immigration litigation. *INS v. Abudu,* 485 U.S. 94, 110 (1988); *see Trump v. Hawaii*, 138 S.Ct. 2392, 2424 (2018) (Kennedy, J., concurring) (describing "the substantial deference that is and must be accorded to the Executive in the conduct of foreign affairs"). To that end, courts apply an abuse-of-discretion standard when reviewing immigration-related agency adjudications, because the agency's rulings "must exercise especially sensitive political functions that implicate questions of foreign relations."[5] *Abudu*, 485 U.S. at 110. This standard leaves courts to review whether the Executive was following the law, because violating the law is an abuse of discretion. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 412–14 (1971) ("Plainly, there is 'law to apply' and thus the exemption for action 'committed to agency discretion' is inapplicable."). So long as there is some "meaningful standard by which to judge

---

[5] For a while, this rule also justified *Chevron* deference. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424–45 (1999) (Kennedy, J.); *but see Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) (overruling *Chevron* deference).

9

the [Executive's] action," courts can ensure that the Executive behaves legally. *Dep't of Commerce v. New York*, 139 S.Ct. 2551, 2568 (2019).

A workable version of this deference is clearest in *Turn v. Safley*. There, the Supreme Court considered deference owed to the Executive's imposition of prison regulations. 482 U.S. 78, 90 (1987). The Court explained that when "'other avenues' remain available for the exercise of [an inmate's] right[s], … courts should be particularly conscious of the 'measure of judicial deference owed to corrections officials … in gauging the validity of the regulation.'" *Id.* (quoting *Jones v. N.C. Prisoners' Union*, 433 U.S. 119, 131 (1977), and *Pell v. Procunier*, 417 U.S. 817, 827 (1874)). That is, because there might be several ways to lawfully provide prisoners access to due process, courts should give the Executive latitude to choose from among them. But the Executive was entitled only to choose from among the *lawful* methods.

"While the executive's consistent and contemporaneous views warranted respect, they 'by no means control[led] the action or the opinion of this court in expounding the law with reference to the rights of parties litigant before them.'" *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2284 (2024) (Gorsuch, J., concurring) (quoting *Irvine v. Marshall,* 20 How. 558, 567 (1858), and citing Aditya Bamzai, *The Origins of Judicial Deference to Executive Interpretation*, 126 YALE L. J.

10

908, 987 (2017)). Indeed, "[n]otwithstanding the deference each branch must accord the others, the 'judicial Power of the United States' vested in the federal courts by Art. III, § 1, of the Constitution can no more be shared with the Executive Branch than the Chief Executive, for example, can share with the Judiciary the veto power, or the Congress share with the Judiciary the power to override a Presidential veto." *Nixon*, 418 U.S. at 704.

In sum, even in cases that justify substantial deference to the Executive, this Court can make the Executive follow the law.

## II. The Government's motion seeks unreviewable authority to deny due process, not deference.

In its most recent filing below, the Government argued in a single paragraph that this Court cannot tell the Government to try to bring Mr. Abrego Garcia home. R.116–17. They told the district court that it had "no authority to direct the Executive Branch to conduct foreign relations in a particular way, or to engage with a foreign sovereign in a given manner." R.116. The Government has repeated those arguments here, adding a few quotations to Judge Wilkinson's earlier opinion affirming the TRO. Mot. 7–8. But the Government continues to misapply precedent and misstate the law.

Let's start with the Government's precedents. The Government is right that the President is "the sole organ of the federal government in the field of

11

international relations" and thus holds a "plenary and exclusive power." Mot. 7 (quoting *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936)). But "like every other governmental power," international relations powers "must be exercised in subordination to the applicable provisions of the Constitution." *Curtiss-Wright*, 299 U.S. at 320. That is why the core holding of *Curtiss-Wright* was that Congress has limited power to intervene in foreign relations—it wasn't talking about a court's power to enforce the basic provisions of the constitution like the Due Process Clause. *See id.* at 319–320.

Similarly, the Government is right that the President's constitutional powers are "conclusive and preclusive" powers, R.117 (quoting *Trump v. United States*, 603 U.S. 593, 607 (2024)), but only "sometimes," *Trump*, 603 U.S. at 607. These powers are "conclusive and preclusive" only as against Congress, not as against the Constitution: "When the President exercises such authority, [they] may act even when the measures [they] take[] are 'incompatible with the expressed or implied will of Congress.'" *Id.* (quoting *Youngstown*, 343 U.S. at 637). Nothing in this analysis justifies the President using his foreign-affairs power to permanently deprive someone of due process by leaving that person trapped in a foreign prison.

To the contrary, a court acts within its authority when it directs the Government to work in good faith to get Mr. Abrego Garcia back. The Government

12

readily admits that it sent Mr. Abrego Garcia to a foreign prison by accident and in violation of an immigration judge's final order. (Dist. Ct. ECF No. 11-3 at ¶¶ 9, 15.) At least at this early stage, the deference due to the Executive should keep the district court from telling the Government *how* to get Mr. Abrego Garcia back. But deference should not keep the district court from telling the Government *to* get him back. In its words, the Government may have been right that the district court has "no authority to direct the Executive Branch to conduct foreign relations *in a particular way*," R.116 (emphasis added), but the district court has the authority to direct the Executive Branch to behave constitutionally.

### III. The Government's new reading of "facilitate" is incoherent.

Thirteen judges have unanimously agreed that the Government should facilitate Mr. Abrego Garcia's return to the United States so that he can enjoy basic due process. Yet the government has a trick up its sleeve: It will pretend that it does not understand the word "facilitate." The Government says that when this Court ordered it to "facilitate" Mr. Abrego Garcia's return, the district court meant that if Mr. Abrego Garcia escapes the foreign prison we sent him to and arrives back in the United States, the Government will not keep him out. Mot. 9; R.116. And the Government insists that this is the settled meaning of "facilitate." *Id*.

13

But far from "track[ing] longstanding executive practice," Mot. 10; R.116, the Government's reading would frustrate decades of executive practice. The Government cites Justice Sotomayor, who cited a USCIS policy: "U. S. Immigration and Customs Enforcement, Directive 11061.1, Facilitating the Return to the United States of Certain Lawfully Removed Aliens, §2 (Feb. 24, 2012)." *Noem*, slip op. at 4. The policy defines "facilitate an alien's return" to mean "[t]o engage in activities which allow a lawfully removed alien to travel to the United States (such as by issuing a Boarding Letter to permit commercial air travel) and, if warranted, parole the alien into the United States upon [their] arrival at a U.S. port of entry."[6]

In the context of someone who the Government sent to a foreign prison, "activities which allow" him "to travel to the United States" necessarily include working in good faith to get him out of prison.[7] And we know that "facilitate" includes this kind of affirmative step, because in issuing Boarding Letters, USCIS helps similarly situated folks board commercial aircraft abroad—it has nothing to do

---

[6] https://www.ice.gov/doclib/foia/dro_policy_memos/11061.1_current_policy_facilitating_return.pdf

[7] *See J.G.G. v. Trump*, No. 25-766, ECF No. 81 (Apr. 16, 2025) (Boasberg, J.) ("That interpretation is deliberately blind to the Court's unequivocal language and the context surrounding its Order.").

with "domestic measures" as the Government describes them. *See* USCIS, I-131A, *Application for Carrier Documentation*, https://www.uscis.gov/i-131a (accessed Apr. 14, 2025). The Government offers no authority for its contrary reading of what it describes as "longstanding executive practice."

Nothing *Ramirez v. Sessions* suggests a different result. 887 F.3d 693, 706 & n.11 (4th Cir. 2018); *see* Mot. 9–10. This court, quoting the ICE policy, just reiterated that facilitating an alien's return "does not *necessarily* include … making flight arrangements for the alien." *Ramirez*, 887 F.3d at 706 n.11. That is, according to the policy, the Government doesn't *always* have to make flight arrangements. The government omits part the quotation to make it look like the Government *never* has to make flight arrangements: "'facilitate' does not involve, among other things, 'making flight arrangements for the alien.'" Mot. 10. But if the Government flies someone to a foreign prison, then he cannot make his own return-flight arrangements. The only way to actually facilitate his return is to coordinate his physical return. To argue otherwise is to assert the right to put any person—citizen or not, gang member or not, terrorist or not—onto a death flight to El Salvador with effectively unreviewable authority.

15

## Conclusion

For these reasons, this Court should deny the motion.

Respectfully submitted,

*/s/ Joseph Dudek*
Joseph Dudek
4605 Huntley Drive
Ellicott City, Maryland 21043
(585) 755-6479
dudekj@gmail.com

## Certificate of Compliance

**1.** This document complies with the type-volume limit in Federal Rule of Appellate Procedure 27(d)(2)(A), because (excluding parts exempted by Rule 32(f)) it contains 2,722 words.

**2.** This document complies with the typeface and type-style requirements of Rule 32(a), because it uses a proportionally spaced typeface (Equity[8]) using Microsoft Word for Microsoft 365.

*/s/ Joseph Dudek*
Joseph Dudek

---

[8] https://typographyforlawyers.com/equity.html